GkeeN, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover a balance of $1,160 for aerial photographic work which he contracted to do and did perform for $2,796.37 and on which the Government has paid him $1,636.37 and has withheld, as liquidated damages at the rate of $20 a day, $140 for an alleged delay of seven days in getting his plane at the airport ready to begin work and $1,020 for an alleged delay of fifty-one days in *507 transmitting the final prints, etc., to be furnished the Soil Conservation Service at Washington.
It is contended by the defendant that under the contract with plaintiff and the facts in the case the deduction for liquidated damages was proper and justified. This constitutes the issue between the parties.
The evidence shows that on September 14, 1935, the Soil Conservation Service of the United States Department of Agriculture received a bid from plaintiff by which he agreed to make certain aerial photographs in certain States for the sum of $2,796.37. On September 20, 1935, a telegram was sent to the plaintiff stating that his offer was accepted, that a formal contract and performance bond were being prepared and would be sent him for execution and return for final completion by the Department, and that “This is your authority to proceed with work immediately”. This telegram was signed by “S. A. Snyder, Department of Agriculture”. The bid was made pursuant to an invitation therefor pertaining to certain provisions with reference to the performance of the work and liquidated damages to which reference iyill be made hereinafter.
Thereafter some communications passed between the plaintiff and Louis A. Woodward, Acting Chief Photogram-metrist of the Department of Agriculture, who appeared to have charge of the matter.
September 28, 1935,, Woodward telegraphed the plaintiff that the Presidential Order required the acceptance of Section 14 (b) of the Bituminous Coal Conservation Act of 1935 before the contract for aerial photography could be awarded. September 30, 1935, plaintiff answered accepting the provisions of the act referred to above. October 10, 1935, the plaintiff wrote Woodward inquiring as to what he would consider the date of the award for the purpose of Paragraph 14 of the specifications, referring apparently to the invitation made to bidders; and also stating that “To date we have not received a formal contract”. October 18, 1935, Woodward wrote the plaintiff in substance that his office had consulted Mr. F. A. Snyder of the Department of Agriculture in order to obtain a ruling as to the date of *508 award, and stated that “The date of award will be considered that of the day the formal contract has been signed”; also that “liquidated damages cannot be assessed for not having a plane on the project until ten days after the formal contract has been signed.”
On October 18, 1935, plaintiff signed the contract which had been forwarded to him but did not return it to the Department of Agriculture until October 21 and it was signed by the defendant on November 5, 1935. Prior to the signing of the formal contract the plaintiff had proceeded and incurred certain expenses incident to the completion thereof.
The formal contract was returned to the plaintiff on November 26, 1935. Plaintiff contends that this date should be taken as the date of the award while defendant insists that the award was made when the telegram was sent to plaintiff on September 21, 1935, authorizing him to proceed with the work immediately.
In Cathell v. United States, 46 C. Cls. 368, 371, the court said:
Neither the contractor nor the defendants incurred liabilities under the contract until it was approved. The defendants were in no position to assert rights under a contract which they neglected to execute.
But in this case it appears that there was a provision for the approval of the contract by a superior officer and in the case before us there is no such provision. Moreover, in the instant case the plaintiff was authorized by telegram to proceed with the work at once before the formal contract was executed and the delay in the execution of the formal contract did not operate to delay the work. A delay under such circumstances was held in Griffiths v. United States, 77 C. Cls. 542, 552, not to operate as a waiver of the time provisions but that it did operate by implication to extend the time for performance a length of time corresponding to the delay in the approval of the formal contract by defendant. In Mueller-Huber Grain Co. v. United States, 90 C. Cls. 401, it was said:
Moreover, the contract did not become effective until it was executed by the defendant on March 27,1930, and that date operated also to extend the contract time for *509 performance by the number of days between March 18, when the contract was forwarded to plaintiffs, and March 27, when it was executed by the defendant.
There seems to have been no questiom raised with reference to the time of delivery of the contract after signature by the defendant in the cases cited above. In the instant~ case, we think the time of delivery of the signed contract to plaintiff is material, the rule being, as stated in 17 0. J. S. 818, sec. 359-
In the case of a written contract, the time of its delivery, unless a different intent appears, is ordinarily deemed to be the time when the contract becomes binding. A date on the writing is generally not conclusive, and if delivery is shown to have been at a different time, that time is deemed to be the date of inception of the contract, unless an intention to other effect is otherwise shown.
The formal contract was not delivered to plaintiff until November 26, 1935. Plaintiff contends that the defendant was bound by the advice which he received to the effect that liquidated damages could not be assessed until ten days after the formal contract had been signed. But we need not determine whether the contract is to be construed in accordance with the written statements of an official of the Soil Conservation Service who bad charge of the work to be performed. We think the date of delivery fixes the time when the contract went into effect and that the award could not be made until the contract went into effect. On this basis, the plaintiff haci ten days after November 26, 1935, to get his plane at the airport and it was already there when the contract was delivered. After the "date of award" he had fourteen days in which to complete the flying and fourteen days after that to complete delivery of materials, that is, until December 24, 1935. The final prints were delivered December 9, 1935. There was therefore no foundation under the final contract for the assessment of liquidated damages.
Counsel for plaintiff calls attention to the fact that after plaintiff’s proposal had been accepted he was advised by Woodward (the government agent), who had been conducting the negotiations with him, that no contract could be awarded *510 for aerial photography until he had accepted a certain provision of the Bituminous Coal Conservation Act, and argues on this ground also that the award could not have been made until the formal contract had been executed and delivered. But in view of what we have said above, we do not think it is necessary to say anything with reference to this matter except that it tends to sustain the argument of plaintiff as to when the award was made.
The defendant relies largely on the case of American Smelting and Refining Co. v. United States, 259 U. S. 75. In that case, as in the one now before this court, there was an original proposition on the part of the Government and its acceptance by the plaintiff pending the preparation of the formal contract which was subsequently executed. The contract was for the purchase of copper and both in the original proposition and the formal contract the price was fixed at a certain amount which the Government paid. The market price was subsequently increased and the plaintiff sued to recover the amount of the increase alleging duress in executing the formal contract and that the agreements had not been executed in the manner prescribed by law. It was held in substance that the petition failed to show a cause of action under any of the allegations thereof. It is true that the opinion in effect holds that the original proposition and the acceptance thereof by the plaintiff constituted a contract, and it may be conceded that the same rule would apply in the instant case. But this does not affect the principle that all prior negotiations are merged in the final contract between the parties. In the case before us the first agreement was superseded by the formal and final contract which, as we have already held, did not take effect until it was delivered. In the American Smelting Co. case, supra, the plaintiff was seeking to have both contracts held invalid and to recover on a quantum meruit the market value of the copper furnished the Government. The subject matter of the case and its general nature prevent the application to the case now before us of anything said in the opinion rendered.
*511 Plaintiff is entitled to recover the amount of the liquidated damages deducted by the Government in making settlement with him and judgment will be rendered accordingly.
Littleton, Judge; and Wiialev, Chief Justice, concur.
Whitaicee, Judge, took no part in the decision of this case.