Jones, Judge,
delivered the opinion of the court:
In response to an invitation for bids the plaintiff on November 21, 1932, submitted a bid for clearing the site for a new post office building at Cambridge, Massachusetts, according to specifications. The specifications provided that all materials removed, including plumbing fixtures, heating apparatus, lighting fixtures, ceiling fans, lifts, and elevators, were to become the property of the successful bidder. The fixtures in question were attached to the property.
. Of the 14 bidders the plaintiff was the only one that offered to pay the United States in addition to furnishing all labor, equipment, and materials, and performing all work required for clearing the site in accordance with the specifications. It expected to secure its compensation from the disposal value of the equipment in the buildings.
The bid was accepted by the Supervising Architect on November 26, 1932. On January 6, 1933, the Supervising Architect approved plaintiff’s bond and notified plaintiff to proceed with the work.
The plaintiff advised the Supervising Architect that wrecking operations would begin immediately. The Government turned the buildings over to plaintiff on January 9, 1933.
Between the time the bids were ma¡de and the time the bond was approved and notice to proceed given, the radiators were not drained and they, together with other parts of the heating apparatus, were allowed to freeze, which caused them to crack and become useless. The undisputed testimony shows that at the time the bids were made the value of the property thus damaged was $1,573.62. It was necessary to sell the damaged property as junk, and as such it brought the sum of $92.75, a net loss to' the plaintiff of $1,480.87, for which plaintiff sues.
*411 The defendant admits the damage, but claims that immediately upon the execution of the contract the plaintiff not only became the owner of the property, but was solely responsible for the care and protection of the same. The record does not support this contention in any respect.
At the time the bids were accepted the buildings in question were occupied, but soon thereafter notice to vacate was given the tenants, and by December 12 all of them had vacated the property. At that time the custodian for the Treasury Department posted a sign on the property to the effect that it belonged to the United States Government, and that trespassers would be prosecuted. He closed the buildings and locked the doors and windows, nailing up any doors and windows on which the locks were broken. The buildings remained in his custody until they were turned over to plaintiff company on January 9, 1933. He testified that he did not drain the radiators, and apparently took no steps to protect them.
The simple device of draining the radiators would have prevented the damage that was done.
The specifications required the plaintiff to execute a bond in the sum of $5,000 for the faithful performance of the contract, and required that it be approved by the Government. The bid, the letter of acceptance, and the specifications, which required the furnishing of an approved bond find set the time for completion of the work within 60 calendar days from the time of receipt of notice to proceed, constituted the contract. Plaintiff had no right to possession, control, or supervision of the property, nor any right to remove any part of it until the bond was approved and notice to proceed given.[1]
A reading of these instruments shows clearly that the property was in the complete custody and control of the Government until the bond was approved and notice to proceed given. It exercised full control and custody until all these essential steps were taken. Clearly it was obligated, under the terms of the contract, to take reasonable care of the premises, and to deliver the fixtures in substantially the same condition as *412 they were at the time the bid was made. This it failed to do.
The plaintiff is entitled to recover the sum of $1,480.87. It is so ordered.
MaddeN, Judge; Whitaker, Judge; Littletoh, Judge, and Whaley, Chief Justice, concur.

 Thos. Earle & Sons v. The United States, 90 C. Cls. 308.